ELLEN E. CHEAIRS, ADMINISTRATRIX, *v.* JAMES R. COATS.

1. LANDLORD AND TENANT. *Eviction from part of premises. Occupation of remaining part.*

    The eviction of a tenant from a part of the leased premises, under a mortgage of which he had knowledge when taking the lease, does not entitle him to occupy the remaining part of the premises free from rent.

2. SAME. *Apportionment of rent.*

    A tenant evicted from a part of the leased premises during his term, under a mortgage of which he had notice when taking the lease, is liable for a due proportion of the rent for the part of the premises which he continues to occupy.

3. SAME. *Unlawful detainer. Evidence.*

    It is competent for the landlord to show, in an action of unlawful detainer against his tenant refusing to pay rent, that the eviction from a part of the premises, of which the tenant complains, was under a mortgage on such part, of which the tenant had knowledge when taking the lease.

FROM the circuit court, second district, of Coahoma county. HON. F. A. MONTGOMERY, Judge.

Mrs. Cheairs, the appellant, was the plaintiff in the court below; Coats, the appellee. was defendant there. From a judgment in defendant's favor the plaintiff appealed to the supreme court. The opinion states the facts.

*D. A. Scott,* for appellant.

The tenant, Coats, knew of the mortgage when he took the lease. The peremptory instruction in his favor should not have been given, aside from all other matters, because of the parol agreement after the execution of the lease varying its terms. *Keat* v. *Price,* 1 Am. Dec., 92; Wharton on Evidence, sec. 906; *Cummings* v. *Arnold.* 37 Am. Dec., 155; *Platt* v. *United States,* 27 Wall., 507; *Emerson* v. *Slater,* 27 How. (U. S.), 32; *Span* v. *Baltzell,* 46 Am. Dec., 346.

*J. W. Cutrer,* for appellee.

Breach of the covenant for quiet enjoyment, or an eviction from all or any part of the leased premises suspends or discharges liability for rent. Summary proceedings to recover possession of leased premises are not allowable for nonpayment of rent while a partial eviction continues. *Wheelock* v. *Warschner,* 34 Cal., 365; *Foss* v. *Dreile,* 47 Mich., 201; *Skags* v. *Emerson,* 50 Cal., 3; *Peoples* v. *Gedney,* 10 Hun, 151; Gear on Landlord & Tenant, sec. 202; *Ib.,* sec. 91; *McClung* v. *Price,* 59 Pa. St., 420; *Hunter* v. *Riley,* 43 N. J. Law, 280; *Christopher* v. *Austin,* 11 N. Y., 213; *Alger* v. *Kennedy,* 49 Vt., 109.

TERRAL, J., delivered the opinion of the court.

Mrs. Cheairs, the plaintiff below, brought unlawful detainer against J. R. Coats for certain lands described in her complaint. Mrs. Cheairs, as administratrix of the estate of S. D. Cheairs, deceased, had been authorized by the chancery court to rent the lands of the decedent for fifteen years for the purpose of getting money for the payment of the debts

of decedent, and no question is made as to her authority to make the lease. She thereupon leased some 1,360 acres, more or less, of land belonging to the estate of said decedent, for ten years to the defendant, J. R. Coats, commencing January, 1894, at a rental of $2,800 per year. The lease expressly provided that if the rent was not promptly paid Mrs. Cheairs might declare the lease void and reoccupy the lands at once. Mr. Coats paid the rent for the years 1894, 1895, and 1896, but refused to pay the rent, or a due proportion thereof, for the years 1897 because he had been evicted of about 480 acres of said land. The land, 1,360 acres, consisted of four separate and distinct tracts. At the time of the lease the 480 acres of which the defendant was subsequently evicted was under a deed of trust for debt, and was thereafter sold and bought by the Equitable Mortgage Co., the holder of said deed of trust.

The defendant refused to pay the rent for 1897, or a due proportion of it, for the lands held by him, and the plaintiff brought this action of unlawful detainer. The defendant does not claim that he has paid a prorated part of the rent, but rests his defense upon the ground that, being evicted of a part of the leased premises, the rent is suspended, and though he holds posession of a part of the leased premises (some nine hundred acres), yet he is discharged from the payment of any rent for the land still occupied by him because of his eviction of a part of the premises. This contention cannot be supported. Where a lessee is evicted from a part of the premises by a paramount title, and continues in possession of other parts of the premises, his rent will be apportioned, and he will be required to pay only a reasonable proportion of the rent for the land held by him, but he will not be permitted to hold any part of the premises without paying a proper rent for such part. Here the tenant is in possession of a large part of the premises and refuses to pay any rent therefor, and also refuses possession to the lessor. His action is inequitable and unlawful.

The lessor proposed to show that when Coats took the lease he knew that a part of the lands were under a deed of trust for debt, and in consequence must have known that by a sale thereunder the lessor's title would determine. She also offered evidence to ascertain a *pro rata* distribution of the rent, and also that she and Mr. Coats had agreed that $800 was a proper reduction from the rent price in consequence of the eviction of Coats from the lands in section 35, but the court excluded the evidence. All this evidence was perfectly admissible.

There is authority that rent will not be apportioned in favor of a wrongdoer, but there is no wrongdoer here. The execution of the deed of trust was lawful, the sale of a part of the land under the deed of trust was lawful, and by the sale the ownership of the land was severed and the rent became due to the several owners in proportion to their several parts.

1 Thomas Coke, *467, note (1st ed.), says: "It was formerly doubted whether a rent service, incident to a reversion, might be apportioned by a grant of part of the reversion, or whether the whole rent should not be extinct and lost, for, since the reversion and rent incident thereto were entire in their creation, it was thought hard that they should be divided by the act of the lessor, and the tenant thereby liable to several actions and distresses. But this conception was too narrow and unfounded to prevail long, for if a person make a lease for three years of land, reserving three shillings rent, as he may dispose of the whole reversion, so he may also of any part of it, since it is a thing in its nature severable, and the rent as incident to the reversion may be also divided, because that, being a retribution for the land, ought to be paid to those who are to have the land upon the expiration of the lease, and hence it is that the rent, or a proportionate part thereof, passes immediately with the reversion without any expression, being made of it in the grant, but the tenant has really no prejudice from such grant, because it is in his power, and it is his duty, to

77 Miss.—54

prevent the several suits and distresses by a punctual payment of the rent," and the note and the text of the author clearly show that rent may be apportioned by any lawful act of the parties or by operation of law.

In *Linton* v. *Hart,* 25 Pa. St., 196, Lewis, C. J., says: "The law will not apportion rent in favor of a wrongdoer, and there-fore if a landlord wrongfully dispossesses his tenant of any portion of the demised premises, the rent is suspended for the whole. But the owner of a reversion has the right to sell the whole or any part of it. Such right is incident to the right of property, and necessary to the full enjoyment of it. The exer-cise of it is not wrongful, and therefore, in the case of a sale of a part of the reversion the law will apportion the rent; and the right of apportionment attaches the moment the sale is made." See, also, *Reed* v. *Ward,* 22 Pa. St., where it is said: "It was at one time supposed by some that a rent service, incident to a reversion was lost by a grant of part of the rever-sion, and could not be apportioned. But this is not the law. A reversion is a thing in its nature severable, and the owner has an undoubted right to dispose of the whole, or any part of it, according to his necessities or convenience, and the rent, as incident to it, being a retribution for the land, may be divided and ought to be paid to those who are to have the land upon the expiration of the lease. The accommodation of mankind requires that the rent shall be apportioned wherever there has been, either by act of the law or by the act of the party, a division made of the land out of which it issues, because with-out this privilege a man who can only dispose of his real estate to advantage by dividing it, might be forced to sacrifice it, and the heirs of a decedent might be seriously injured if they could not divide the inheritance without losing their remedies for the rents. A reversioner may sell his estate in different parts to as many different persons, and the tenant will be bound to pay to each his due proportion of the rent. Or if the lessor should die, and the estate descend to his heirs as ten-

ants in common, the tenant will be bound to pay to each his proper proportion of the rent. The apportionment, where the parties cannot agree, is to be made by the jury according to the value, not the quantity of the respective parts."

We think that the circuit court erred.

*The judgment is reversed, and the case is remanded to be proceeded in according to the principles herein announced.*